[No. 4345–II.   Division Two.   February 6, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. JAMES
WILLIAM SMITH, *Appellant.*

Lawrence W. Moore, for appellant.

Don Herron, Prosecuting Attorney, and Joseph D. Mladinov, Senior Deputy, for respondent.

PEARSON, J.—Defendant appeals his conviction of two counts of possession of a controlled substance and one count of possession of a controlled substance with intent to deliver.

At issue is the sufficiency of an affidavit in support of a search warrant that led to the discovery of controlled substances in defendant's home. We hold the affidavit insufficient as a matter of law and reverse defendant's conviction.

The affidavit of a Tacoma police officer stated that the officer had probable cause to believe there were controlled substances in defendant's residence in Tacoma, Pierce County, Washington.

That affiant's belief is based upon the following facts and circumstances:

Within the last 72 hours affiant has been in contact with a confidential informant who stated that he/she could purchase heroin from the above subject James Smith by going through a third party. The informant stated that the third party would be met at a location on the east side and the informant would give this person money to purchase heroin. The third party would then go to the Smith residence, purchase the heroin, and bring it back to the informant.

The informant and the informant's vehicle were then searched without any heroin being found. A surveillance was then set up around a predetermined location on the east side of Tacoma. The informant was given a quantity of money and then followed by the affiant to this location. After a short wait, the informant was contacted at this location by the third party, who had been described by the informant. After a brief conversation, the third party left, driving a vehicle, and was followed by Invs of the TPD, and was observed going to the residence of James Smith and entering the residence. The third party was observed leaving the residence a short time later and was followed directly back to the informant's location. After talking briefly with the third party, the informant left the area and was contacted by affiant Lynch a few blocks away. At this time, the informant gave affiant Lynch a balloon containing a brown powder and stated that he/she had purchased the substance from the third party already mentioned and believed the [substance] to be heroin. The informant stated that the third party had said the heroin was purchased from James Smith.

Within the last two months affiant has been in contact with a separate reliable informant who stated that James Smith keeps large quantities of heroin in his residence and deals [in] large quantities of the drug on a steady basis. A check with the intelligence files in the SID office revealed six cards which indicate a steady flow of informant information concerning James Smith's drug activities.

The search warrant was issued and executed. A small amount of heroin, methadone, and marijuana was seized from defendant's home, leading to the present case. The trial court denied defendant's pretrial motion to suppress the evidence seized as a result of the search. We agree with defendant's contention that the affidavit falls short of the constitutional standards of probable cause to search required by *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964), and *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969).

■ An affidavit is sufficient to establish probable cause under the 2–pronged requirements of *Aguilar–Spinelli* when from the facts contained therein a magistrate can

make an affirmative independent determination that both
(1) the information, and (2) the informant are reliable.
*State v. Laursen,* 14 Wn. App. 692, 544 P.2d 127 (1975).
Although affidavits are not to be interpreted in a hyper-
technical manner, a magistrate must be informed of under-
lying circumstances from which the informant concluded
the narcotics were where he claimed, and some of the
underlying circumstances from which the officer concluded
the informant was credible or his information reliable.
*State v. Walcott,* 72 Wn.2d 959, 435 P.2d 994 (1967).

In the case at bench, except for the police surveillance,
the affidavit lacks any "basis of information" facts concern-
ing the third party, who was the ultimate source of the tip.
Also, except for the police surveillance, the affidavit con-
tains no facts showing how the officer could conclude that
the third party informant was credible or his information
reliable. Thus unless the police observations through the
surveillance described in the affidavit are sufficient to cor-
roborate both prongs of *Aguilar–Spinelli,* the warrant must
fail.

■ We start with the Supreme Court's significant state-
ment in *Spinelli v. United States,* at pages 415–16:

A magistrate cannot be said to have properly discharged
his constitutional duty if he relies on an informer's tip
which—even when partially corroborated—is not as reli-
able as one which passes *Aguilar's* requirements when
standing alone.

Stated in question form: Can it fairly be said that the tip,
even when certain parts of it have been corroborated by
independent sources, is as trustworthy as a tip which would
pass *Aguilar–Spinelli's* tests without independent corrobo-
ration? An answer to this question requires an analysis of
each prong, and to what extent deficiencies in either may
be cured by self–verifying details supplied to and corrobo-
rated by the officers. *See Draper v. United States,* 358 U.S.
307, 3 L. Ed. 2d 327, 79 S. Ct. 329 (1959).

■ The first prong, commonly referred to as the "basis
of knowledge" prong, requires the affidavit or the testimony

of the officer to recite the manner in which the informant gathered his information, and if the information came from a third person, how that person obtained his information. In sum, the affidavit in this case must make clear how the third party informant concluded defendant's home contained heroin. *Aguilar v. Texas, supra; Spinelli v. United States, supra.*

In *Stanley v. State,* 19 Md. App. 507, 531, 313 A.2d 847, 861 (1974), the court gave a useful analysis of the type of judicial scrutiny the magistrate must apply in determining whether *Aguilar–Spinelli*'s first prong has been satisfied.

> The "basis of knowledge" prong assumes an informant's "veracity," and then proceeds to probe and test his conclusion: ("What are the raw facts upon which the informant based *his* conclusion?" "How did the informant obtain those facts?" "What precisely did he see or hear or smell or touch firsthand?" "If he heard the facts from someone else, what makes that third person 'credible' and how did that third person come by the knowledge?").

The judge must ascertain the source for the raw data—the product of someone's senses—and then weigh that data for himself. He is concerned not with that part of an affidavit or testimony which provides information *about* the informant, but with recitation of the story coming *from* the informant.

Applying these principles to the case at bench, it is clear that we must focus on the anonymous third party and information the affidavit contains which shows how he came by his knowledge that defendant's home contained heroin and that defendant was selling it from that location. Because the affidavit contains no information whatever about how the third party knew there was heroin at defendant's home, we must consider whether the observations of the third party's conduct supply this obvious deficiency. The police observed the third party in a brief encounter with their informant. They followed him to defendant's residence, saw him enter, leave, and return to

the area where their informant was positioned. The informant, previously searched, had a balloon of heroin that he said he received from the third party, who in turn said he obtained it from defendant. These observations and details certainly lend credence to the informant, and had the informant himself entered defendant's home empty-handed and returned with the balloon of heroin, we would not hesitate to hold the first prong of *Aguilar* satisfied with respect to him. *Draper v. United States, supra.* But with respect to the third party, these observations tell the magistrate little about how the third party knew defendant's home contained heroin. He was not searched, and could easily have carried the heroin with him when he entered defendant's home. The observations of his conduct were inherently ambiguous. Had he ever been in defendant's home before? Had he ever purchased drugs before this occasion? What had been his relationship with defendant? None of these questions was answered in the affidavit. In sum, the magistrate lacked sufficient facts to establish the third party's "basis of knowledge" and what the police observed him do on the occasion in question does not in any significant way satisfy the first prong of *Aguilar–Spinelli.*

The second prong of *Aguilar–Spinelli,* commonly referred to as the "veracity" prong, also will not pass scrutiny. The test here is whether some underlying circumstances are given from which the officer could conclude that the third party was credible or his information reliable. *Aguilar v. Texas, supra.* No underlying circumstances are detailed in the affidavit concerning the third party's reliability. But for the police observations of him, he remains as anonymous as the person who phones in a tip to the police without identifying himself. *See State v. Lesnick,* 84 Wn.2d 940, 530 P.2d 243 (1975).

There appears to be some confusion in cases around the country as to whether "self–verifying details" stemming from police observations may also be used to supply deficiencies in the veracity prong of *Aguilar. Draper v. United*

*States, supra; Stanley v. State, supra. See* 1 W. LaFave, *Search and Seizure* § 3.3, at 546–47 (1978). In our opinion, the better view is that such details should not be used in reference to the veracity prong, since in most instances those details will usually be as consistent with an elaborate fabrication as with truthfulness. *See* Note, *Probable Cause and the First–Time Informer,* 43 U. Colo. L. Rev. 357 (1972); *Stanley v. State, supra.*[1]

But even if we were to assume that corroborated detail would, under some circumstances, supply deficiencies in the veracity prong of *Aguilar,* there is in this case little in the "self–verifying details" which would create a reasonable inference that the third party's movements or statements to the informant were in any way reliable. The magistrate, and indeed the police, had no way of verifying that the heroin given to the informant probably came from defendant's house. At best, these details establish the third party as a drug dealer of unknown reliability who entered defendant's home shortly before he consummated a drug deal with a police informant. In no way do they corroborate his reliability. *See State v. Chatmon,* 9 Wn. App. 741, 515 P.2d 530 (1973).

We conclude that neither prong of *Aguilar–Spinelli* was satisfied in this case, and the evidence obtained in the search should have been suppressed. In view of our disposition of this issue, we need not consider the other assignments of error asserted by defendant.

Reversed and remanded with instruction to dismiss the information.

REED, C.J., and PETRIE, J., concur.

---

[1]This would not be true of the citizen informer who generally would have no reason for fabrication. *State v. Northness,* 20 Wn. App. 551, 582 P.2d 546 (1978).