[No. 4811–II.   Division Two.   January 22, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. HANS
JOSEPH MAFFEO, *Appellant.*

*Ben Shafton,* for appellant.

*Art Curtis, Prosecuting Attorney,* and *Roger A. Bennett,
Deputy,* for respondent.

REED, C.J.—Hans Joseph Maffeo contends that his conviction of delivery of a controlled substance was based on evidence gathered pursuant to a defective search warrant. He asserts that the supporting affidavit was facially insufficient to establish probable cause. We disagree and affirm defendant's conviction.

Deputy Robert Reese of the Clark County Sheriff's Office alleged, in essence, the following facts in an affidavit prepared to support the issuance of a search warrant for defendant's residence.

(1) An informant claimed he could introduce Reese to an individual who had connections with a large cocaine dealer.

(2) Reese was introduced to Michael Martin, the intermediary, and negotiated the purchase of one–half pound of cocaine. This agreement provided for the preliminary purchase of a two–gram sample.

(3) During this initial meeting a confederate of Martin's arrived, spoke with Martin briefly, then left.

(4) Martin advised Reese that his confederate, Carl Robinson, was going to the home of a person named "Hans" to obtain the sample and would meet them at a rendezvous point.

(5) Police surveillance units followed Robinson directly to Hans' residence, then directly to the meeting place.

(6) Robinson was introduced to Reese at which time Reese purchased the sample with bills having prerecorded serial numbers.

(7) Robinson told Reese he obtained the cocaine from "Hans."

(8) The parties then agreed that Reese would test the cocaine and return with funds to complete the transaction. As soon as Reese left, Robinson returned directly to Hans' residence.

(9) Reese conducted a field chemical test on the sample; the result was positive for cocaine.

Based on these allegations, Judge Robert Harris of the Superior Court for Clark County authorized a search of defendant's residence for the suspected cache of cocaine and the recorded bills. After officers confronted the

defendant with additional cocaine and the marked bills they found at the residence, Maffeo confessed to delivering cocaine to Carl Robinson.

The crux of defendant's argument is that the supporting affidavit provides insufficient facts and circumstances from which a magistrate might reasonably conclude that cocaine and the marked money could be found at defendant's residence. We note that Maffeo does not challenge the veracity of Deputy Reese's allegations; rather, he asserts that the affidavit is facially inadequate because an insufficient nexus was established between the cocaine, the marked bills, and his residence.

We will assume here that the statements of Martin and Robinson, implicating defendant as the source of their cocaine, are indispensible to establish this connection.[1] Maffeo argues that these statements do not pass the 2–pronged test of *Aguilar–Spinelli* for determining whether an informant's information is sufficient to establish probable cause. *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969). We disagree. The "veracity" prong of *Aguilar–Spinelli* examines the truthfulness of the informant. The "basis of knowledge" prong tests whether the informant's conclusions are supported by a sufficient factual basis. *Id.* This latter inquiry does not draw into question the veracity of the informant's information; rather, it tests the reasonableness of the conclusions drawn from the information. In conducting this evaluation the magistrate is entitled to draw reasonable inferences from the facts and circumstances set forth in the supporting affidavit. *State v. Frye,* 26 Wn. App. 276, 613 P.2d 152 (1980). Considering Martin and Robinson were

---

[1] We express no opinion as to whether the supporting affidavit is sufficient to establish probable cause without the hearsay statements of Martin and Robinson. It could be argued that it is. The State has not done so.

intimately associated with the cocaine transaction, it is reasonable to infer they spoke from firsthand knowledge when they advised Deputy Reese that the cocaine was obtained from the defendant. Further, these statements are corroborated by police observation of Robinson proceeding directly to Maffeo's residence after conferring with Martin, and returning immediately with the cocaine. Robinson went directly to the house with the marked money after Reese left to obtain more funds for a larger purchase.

The defendant maintains that our decision should be controlled by *State v. Smith*, 28 Wn. App. 387, 624 P.2d 191 (1981). In *Smith* an unproven informant advised *police* that he could purchase heroin from Smith through a third party. The buy was arranged. Police officers observed the third party meet with the informant, then go directly to Smith's residence and return. After this meeting the informant turned over a balloon of heroin to the police, advising them it was purchased from the third party. The informant also stated that the third party *told him* that the heroin was obtained from Smith. We concluded that these allegations were insufficient to support the issuance of a search warrant because neither prong of *Aguilar–Spinelli* had been satisfied.

In *Smith* the police had no direct contact with the third party. Thus, they had to depend entirely upon the unproven informant's version of what he had been told by the third party. There was simply no corroboration of this story, which could have been a complete fabrication. In contrast with *Smith,* Deputy Reese was dealing directly with Martin and Robinson. Viewing *them* as informants, their statements are surrounded by indicia of reliability. First, their statements that they obtained cocaine from the defendant were admissions against their penal interest. *State v. Lair,* 95 Wn.2d 706, 630 P.2d 427 (1981). These statements were made without knowledge that Reese was a police officer; thus, it is unlikely that they had any motive

for lying. *Id.* Further, the statements were corroborated by police observations of Robinson proceeding directly to the defendant's residence after a short conference with Martin, then returning directly to the rendezvous point with the sample of cocaine. Finally, police observed Robinson drive back to Maffeo's house apparently with the marked money in his possession ostensibly to obtain additional cocaine.

■ Maffeo further argues that even if a sufficient nexus exists between the cocaine sold and his home, it does not follow that an additional quantity of cocaine existed at his residence. Other jurisdictions that have ruled on this issue hold that evidence of a sale of drugs supports an inference that more will be found at the place of operation. *See* 1 W. LaFave, *Search and Seizure* § 3.7 (1978); *United States v. Valenzuela,* 596 F.2d 824 (9th Cir. 1979); *cf. State v. Helmka,* 86 Wn.2d 91, 542 P.2d 115 (1975) (magistrate could reasonably infer from the presence of marijuana plants that additional plants might be present on the premises). We believe this to be a sound rule and dispositive of defendant's argument.

■ With respect to the marked bills, we conduct our review mindful that considerable weight is given to the magistrate's conclusion. *State v. Seagull,* 95 Wn.2d 898, 632 P.2d 44 (1981). Generally, a marginal case should be resolved in favor of the warrant. *State v. Partin,* 88 Wn.2d 899, 567 P.2d 1136 (1977). Although reasonable minds might differ, we believe it was reasonable for the magistrate to conclude that the marked bills would be found at the defendant's residence in light of the aforementioned surrounding facts and circumstances.

Finally, Maffeo maintains that certain admissions he made to police officers after being confronted with the fruits of the search warrant should have been suppressed. In light of our resolution of the first issue, this issue need not be pursued.

Affirmed.

PETRIE and PETRICH, JJ., concur.

Reconsideration denied February 23, 1982.

Review denied by Supreme Court April 23, 1982.