UNITED STATES of America, Plaintiff,

v.

Jerry K. SPEAKS, Eugene H. Thomason: Ronald T. Harstad; Kathleen R. Hudson; Cathryn M. Olsowski; Lenore A. Lee, Defendants.

Nos. CR–86–273 to CR–86–277–1 and CR–86–279–1.

United States District Court, E.D. Washington.

Nov. 17, 1986.

James B. Crum, Asst. U.S. Atty., Spokane, Wash., for plaintiff.

Peter Offenbecher, Daniel J. Keane, Carl Diana, Richard B. Kayne, Philip Wetzel, Gene E. Hamilton, Spokane, Wash., for defendants.

### ORDER GRANTING MOTION TO SUPPRESS EVIDENCE

QUACKENBUSH, District Judge.

On October 30, 1986, the court held a hearing on defendants' motion to suppress evidence. Plaintiff was represented by Assistant United States Attorney James B. Crum. Defendant Jerry K. Speaks appeared personally and through his attorney Peter Offenbecher. Defendant Eugene H. Thomason was present and represented by

Daniel J. Keane. Carl Diana appeared on behalf of defendant Ronald T. Harstad. Defendant Kathleen R. Hudson appeared in person and was represented by Richard B. Kayne. Philip Wetzel appeared on behalf of defendant Cathryn M. Olsowski, and defendant Lenore A. Lee was represented by Gene E. Hamilton.

Defendants seek to suppress evidence of a methamphetamine laboratory which was seized from a trailer motel room. Pursuant to a warrant issued by a lay state court judge, local enforcement officers conducted the search leading to the seizure. As grounds for the challenge, defendants assert that the affidavit in support of the warrant contained statements made falsely or with reckless disregard for the truth and that it failed to establish probable cause for the issuance of the warrant. Defendants also contend that the officers failed to comply with the knock and announce requirements for executing a search warrant. Defendants base their challenge on both the state and federal constitutions.

It is undisputed that the warrant in question was obtained from a state court judge solely at the behest of state officials. Although there was testimony at the hearing that the local officers originally intended to wait for the arrival of federal agents before executing the warrant, they in fact conducted the search on their own in response to indications that the individuals in the trailer might be leaving. Some telephone contact between a local police officer and a representative of the United States Drug Enforcement Agency did occur during surveillance prior to obtaining the warrant. Still this court finds that, as a practical matter, there was no federal participation in this operation but rather it was undertaken solely pursuant to state authority. The facts of this case thus present an issue admittedly unresolved in this circuit, that is whether the court must analyze a motion to suppress evidence seized by state officials without any federal intervention under the state, in addition to the federal, constitution.

In *Elkins v. United States*, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960), the Court did away with the "silver platter doctrine" by holding that evidence seized by state officials in violation of the federal constitution could not be used in a federal prosecution. The present inquiry, however, is not whether this court must evaluate evidence seized by state officers in terms of the Fourth Amendment, but whether the court must also determine if it was obtained in violation of the state constitution.

In *United States v. Henderson*, 721 F.2d 662, 664 (9th Cir.1983), the Ninth Circuit expressly stated that the present question is undecided. The resolution of the issue in *Henderson* differed from that raised by this case in that the *Henderson* court evaluated the sufficiency of an affidavit for a search warrant which, among other statements, contained information allegedly obtained in violation of state and federal law. The court found that it need not address the question of which law, state or federal, applied because even if the evidence was obtained in violation of either law, the affidavit presented a sufficient basis for a probable cause finding absent the offending material. *Id.* at 665. Nonetheless, in dicta, the court stated

[w]e believe that it would undercut the deterrent function of a state's exclusionary rule if state officers were able to turn illegally seized evidence over to federal authorities whenever they suspected the subject of the investigation of an offense susceptible to federal, as well as state, prosecution. We think there is much to be said for the argument that federal courts should, in the interest of comity, defer to a state's more stringent exclusionary rule with respect to evidence secured without federal involvement.

█ The circuit has expressed a similar view in previous cases. *United States v. Cordova*, 650 F.2d 189, 1980 (9th Cir.1981) ("The admissibility in federal court of evidence seized by state officers is governed by state standards, subject to limitations

imposed by the federal constitution."); *United States v. Orozco,* 590 F.2d 789, 792 n. 11 (9th Cir.1979) ("The traditional rule in this circuit has been that a search and seizure by state officers must be judged by both state and federal standards in federal prosecutions."); *United States v. Fisch,* 474 F.2d 1071, 1075 (9th Cir.1973) (The stop of a vehicle made by state officials "is governed by state law, subject, of course, to constitutional standards.") In light of this guidance from the circuit and the absence of any controlling authority, this court concludes it must analyze the sufficiency of this affidavit under both state and federal law.

█ Because the analysis mandated under Article 1, Section 7 of the Washington constitution is more demanding than the federal standard, the court will begin its analysis with the Washington constitution.[1] Although the United States Supreme Court in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), rejected the traditional *Aguilar-Spinelli* analysis in favor of a totality of the circumstances standard, the Washington Supreme Court subsequently declared that the former two-prong test would still be applied to affidavits challenged under the state constitution. *State v. Jackson,* 102 Wash.2d 432, 437, 688 P.2d 136 (1984). To satisfy the initial "basis of the knowledge" prong "the officer's affidavit must set forth some of the underlying circumstances from which the informant drew his conclusion so that a magistrate can independently evaluate the reliability of the manner in which the informant acquired his information...." *Id.* at 435, 688 P.2d 136. The "veracity" determination requires that "the affidavit must set forth some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable." *Id.* In order to uphold a search warrant under Washington law, the court must find that the affidavit satisfied both

aspects of this standard. *Id.* at 437, 688 P.2d 136.

The relevant portion of the affidavit in this action provides:

That your Affiant's belief is based upon the following facts and circumstances: Informant "A" advised affiant within the previous week that "A" was aware of an operation to manufacture "crack" or "speed" (amphetamines or methamphetamine) at a trailer at Leisure Village in Omak, Washington. "A" indicated that "A" was told this by a person staying the trailer. "A" attempted to make a controlled buy at the trailer on the early morning of August 20, 1986. "A" was told by a participant in the operation, residing at the motel, that the persons in the trailer were still cooking "crack" and didn't have a finished product yet. "A" detected a strong odor of ether coming from the vicinity of the suspect trailer. Affiant corroborated the presence of this odor at the trailer area.

"A" recontacted the participant at the motel a few hours later and was told that the trailer occupant had stopped "cooking" because they needed a quantity of isopropanol to be obtained when the stores in Omak opened. "A" indicated the odor of ether was gone. Affiant verified the absence of the ether odor at this time, and observed the participant at the motel, identified by "A", go to downtown Omak and return with a package. "A" then returned a few hours later and learned that the trailer occupants were still cooking, and "A" could smell the ether odor again. The presence of the odor was verified by affiant.

This court is faced with a situation in which the informant obtained his information through third parties. The Washington court addressed a similar circumstance in *State v. Smith,* 28 Wash.App. 387, 624 P.2d 191 (1981). The affidavit questioned in that case provided

---

1. Article I, Section 7 of the Washington Constitution provides:
    Invasion of Private Affairs or Home Prohibited. No person shall be disturbed in his private affairs, or his home invaded, without authority of law.

[t]hat affiant's belief is based upon the following facts and circumstances:

Within the last 72 hours affiant has been in contact with a confidential informant who stated that he/she could purchase heroin from the above subject James Smith by going through a third party. The informant stated that the third party would be met at a location on the east side and the informant would give this person money to purchase heroin. The third party would then go to the Smith residence, purchase the heroin, and bring it back to the informant.

The informant and the informant's vehicle were then searched without any heroin being found. A surveillance was then set up around a predetermined location on the east side of Tacoma. The informant was given a quantity of money and then followed by the affiant to this location. After a short wait, the informant was contacted at this location by the third party, who had been described by the informant. After a brief conversation, the third party left, driving a vehicle, and was followed by Invs of the TPD, and was observed going to the residence of James Smith and entering the residence. The third party was observed leaving the residence a short time later and was followed directly back to the informant's location. After talking briefly with the third party, the informant left the area and was contacted by affiant Lynch a few blocks away. At this time, the informant gave affiant Lynch a balloon containing a brown powder and stated that he/she had purchased the substance from the third party already mentioned and believed the [substance] to be heroin. The informant stated that the third party had said the heroin was purchased from James Smith. Within the last two months affiant has been in contact with a separate reliable informant who stated that James Smith keeps large quantities of heroin in his residence and deals [in] large quantities of the drug on a steady basis. A check with the intelligence files in the SID office revealed six cards which indicate a steady flow of informant information concerning James Smith's drug activities.

Analyzing that affidavit under the *Aguilar-Spinelli* test, the court stated it must "focus on the anonymous third party and information the affidavit contains which shows how he came by his knowledge that defendant's home contained heroin and that defendant was selling it from that location." *Id.* at 391, 624 P.2d 191. Finding that the affidavit lacked any information regarding how the third party obtained knowledge that there was heroin at defendant's house, the court considered whether police observations of the third party's conduct would satisfy this deficiency. *Id.* The court concluded that such surveillance was not sufficient to provide the issuing court with adequate information to satisfy either the "basis of knowledge" or the veracity prong and ordered suppression of the evidence. *Id.* at 392–93, 624 P.2d 191.

More recently, the Washington Court of Appeals again faced a situation where the information supplied in support of a search warrant was obtained from a third party through an informant. In *State v. Morehouse*, 41 Wash.App. 334, 704 P.2d 168 (1985), the informant told the police that he could buy marijuana from a "middle man". The officers then observed two drug transactions between informant and the "middle man". On three occasions the informant and the "middle man" drove to defendant's home and then the middle man went into the house alone. Upon his return, the "middle man" gave the drugs to informant. The informant then notified the police officers that the "middle man" purchased drugs from defendant's residence. Relying on that information, the police obtained a warrant to search defendant's home. The court upheld the trial court's suppression of the evidence seized during the search based upon the lack of any information from which the issuing court could have determined the reliability or basis of knowledge for information obtained through "middle man". *Id.* at 336, 704 P.2d 168. Noting its decision was in accord with the *Smith* opinion, the court stated the latter

case held that "when an informant's tip is based upon information from a third party, probable cause is not established unless the affidavit contains facts enabling the magistrate to make an independent determination that both the information supplied by the third party and the third party himself are reliable. *Id.*

The holding in *Smith* also was discussed by the Washington court in *State v. Maffeo*, 31 Wash.App. 198, 642 P.2d 404 (1982). In affirming defendant's conviction, the court distinguished its facts from those in *Smith* noting that

> [i]n *Smith* the police had no direct contact with the third party. Thus, they had to depend entirely upon the unproven informant's version of what she had been told by the third party. There was simply no corroboration of this story which could have been a complete fabrication. In contrast with *Smith*, Deputy Reese was dealing directly with Martin and Robinson. Viewing them as informants, their statements are surrounded by indicia of reliability.

*Id.* at 201, 642 P.2d 404.

The case at bar presents a factual scenario more similar to *Smith* and *Morehouse* than to *Maffeo*. The informant's initial knowledge of the existence of the laboratory came from an unidentified occupant of the trailer. In regard to the first attempted buy, the informant was told by another unidentified person, denominated in the affidavit as a "participant in the operation", that the drugs were still "cooking" and thus were not yet available. Again, with the second attempted buy, the informant derived his knowledge through the "participant", not by direct communication or observation. Finally, as to the last attempted purchase the affidavit merely states the informant "then returned [to the

trailer] a few hours later and learned the trailer occupants were still cooking ...". As to this transaction, the affidavit provides no information regarding the source or the means through which informant obtained this data.[2]

■ Neither the trailer occupant nor the "participant" is identified in the affidavit. The affiant had no personal contact with these individuals to determine their reliability. Additionally, there are no facts from which the issuing judge could have independently determined how these individuals obtained their information or why it should be regarded as reliable. In light of these deficiencies, this court concludes that under Washington law the magistrate lacked a sufficient basis to find probable cause for issuance of the warrant to search the trailer motel room.

The court reaches its conclusion without considering evidence outside the face of the affidavit. Nonetheless, in passing, the court notes that this conclusion is bolstered by the court's finding that the affidavit contained several inaccurate, or at least misleading, statements. In reading the affidavit one gets the clear impression that the informant was present at the trailer and was an active party during the attempted drug buys. The police reports compiled on this matter (Ct.Rec. 8, Attachment) and the testimony of Sergeant Pfitzer, the commanding officer in the search, reveal that although the informant was once on the steps of the trailer he never actually entered. In fact, during the attempted buys he remained at the motel office or in the parking lot outside the trailer. He had no direct interaction with the individuals allegedly engaged in the manufacturing but rather always contacted them and received communications from them through Kim Zufall who is identified

---

**2.** After the first and third attempted buys the informant told the affiant he could smell ether. The affiant drove by the trailer and verified this odor. The mere presence of an ether smell, however, would be insufficient to establish that criminal activity was occurring. Ether is a non-contraband substance which has many legal uses including starting car engines. *See United*

*States v. Tate,* 694 F.2d 1217, 1221 (9th Cir.1982) *vacated on other grounds,* 468 U.S. 1206, 104 S.Ct. 3575, 82 L.Ed.2d 873 (1984); *United States v. Stanert,* 762 F.2d 775 (9th Cir.1985). This courts finds that the presence of the odor does not remedy the deficiencies regarding the third parties' veracity and bases of knowledge.

in the affidavit as a "participant". This denomination itself appears to be inaccurate in that no evidence was ever produced demonstrating that Ms. Zufall was an active party to the manufacturing scheme. The record shows that although she resided at the motel, she occupied a different trailer. She has not been indicted in this matter. The only indication that she may have been involved in this enterprise is that after the informant was told isopropynol alcohol was needed to complete the process, Ms. Zufall and her boyfriend were observed returning from downtown to the suspect trailer with a white grocery-type bag. When the affidavit is viewed with these facts in mind, a finding of probable cause is even more tenuous.

Because this court previously stated that the seizure must have been permissible under both state and federal law to be admissible in a federal prosecution, upon finding that the search violated the Washington constitution, the court need not consider the question under the Fourth Amendment. Moreover, because the court concludes the warrant should not have been issued based upon the present affidavit, it need not reach the question of compliance with the knock and announce requirement.

Defendants' motion to suppress is GRANTED. All evidence obtained during the search pursuant to the warrant is HEREBY SUPPRESSED.

IT IS SO ORDERED. The Clerk is directed to enter this Order and forward copies to counsel.