[No. 54083–7. En Banc. June 9, 1988.]

THE STATE OF WASHINGTON, *Respondent,* v. WAYNE
DOUGLAS SMITH, *Appellant.*

*Timothy K. Ford,* for appellant.

*Gary P. Burleson, Prosecuting Attorney,* for respondent.

CALLOW, J.— The defendant, Wayne Douglas Smith, appeals his convictions for possession of a controlled substance and unlawful use of drug paraphernalia. Smith pleaded guilty to the charges after the trial court denied his motion to suppress evidence uncovered during two searches of his property. He appeals the denial of his motion to suppress. We conclude that the affidavit for the issuance of a warrant for the search of the Wood Lane property contained a sufficient recitation of facts to establish probable cause independently of information in the affidavit which may have been illegally obtained. A search warrant that is issued based upon an affidavit reflecting adequate legally garnered information to sustain a finding of probable cause is valid even though other information set forth in the affidavit has been illegally acquired. *State v. Coates,* 107 Wn.2d 882, 735 P.2d 64 (1987); *State v. Cord,* 103 Wn.2d 361, 693 P.2d 81 (1985); *State v. Cockrell,* 102 Wn.2d 561, 689 P.2d 32 (1984).

I

Smith's arrest resulted from information provided by a police informant. On January 5, 1984, the informant called Detective Morrison of the Washington State Patrol offering to provide information on narcotics trafficking in Mason County. Detective Morrison had never met the informant and knew nothing about him at the time of this telephone conversation. On January 6, 1984, Detective Morrison met with the informant. At the meeting the informant gave the detective information about marijuana growing at Route 5, Box 575–A (the River Road property) and 40 Wood Lane (the Wood Lane property), in Shelton, Washington. The informant told Detective Morrison that Smith was involved in growing marijuana at these locations. At the end of this meeting the detective paid the informant $20.

Detective Morrison checked on the informant's background by calling the Mason County Sheriff's office which had referred the informant to the Washington State Patrol. Morrison learned that no cases had been opened by the sheriff's office with information provided by the informant. Additionally, the detective confirmed that the informant was not currently wanted by any police agency.

On January 7, 1984, Detective Morrison asked Mason County Public Utility Districts 1 and 3 for information on the power usage at the River Road and Wood Lane properties. He did not obtain a search warrant before making these requests. Detective Morrison subsequently received a report from Don Young of PUD 1 stating that the power usage at the River Road property had dropped several months before. Detective Morrison suggested to Mr. Young that an illegal power splice was in place at the River Road property, and Mr. Young went to the property to investigate. Mr. Young was unable to discover the splice, so he called Detective Morrison to ask if the detective would accompany him out to River Road to locate the power splice.

On January 25, 1984, Mr. Young and Detective Morrison went to the River Road property. They entered the curtilage area between the house and the outbuildings and removed the power meter that served the River Road property. Detective Morrison then pressed his ear against one of the outbuildings and detected a hum that continued after the power meter had been removed. Detective Morrison reported this to Mr. Young who stated that the humming indicated an illegal splice. Additionally, while on the River Road property, Detective Morrison noticed a strong odor of marijuana coming from a stovepipe at the rear of a shed.

Later that day, Detective Morrison filed an affidavit for a search warrant for the River Road property. The affidavit included the information from the informant, the evidence of the drop in power usage, and Detective Morrison's observations made during his trip to the River Road property with Mr. Young.

Detective Morrison subsequently obtained a search warrant for the River Road property, which he executed on January 25. Smith was not present when the warrant was executed. A search of the property revealed what officers believed to be a "grow" room in one of the outbuildings, but the only evidence obtained was two marijuana leaves.

While he was at the River Road property neighbors told Detective Morrison that approximately 15 minutes before the officers arrived Smith had driven away in a heavily loaded pickup truck. Detective Morrison then went to the Wood Lane property, where he observed a pickup truck being unloaded by a person he was unable to identify.

Detective Morrison attempted to obtain a search warrant for the Wood Lane property based on his observations. However, the Mason County prosecutor refused to apply for a warrant based on that information. The next morning, Detective Morrison called the informant and told him that no contraband had been seized in the search of the River Road property and that he had been unable to obtain a warrant for the Wood Lane property.

In earlier conversations, the informant had suggested to Detective Morrison that he, the informant, could go onto the Wood Lane property to check some roofing he had done for Smith several months earlier. Detective Morrison did not ask the informant to go onto the property, and told the informant that he could not go there without a legitimate reason and could not trespass.

Later that night, the informant went to the Wood Lane property. While on the roof, he looked through the skylight of the residence and observed marijuana plants growing. On January 27, the informant called Detective Morrison to tell him what he had seen the night before. On the basis of this information and the information obtained during the River Road search, Detective Morrison applied for a search warrant for the Wood Lane property.

Detective Morrison obtained and executed the warrant for the Wood Lane property on January 27. A search of the premises produced several marijuana plants, lights, and

books on marijuana cultivation. Smith subsequently was charged and convicted of possession of a controlled substance and unlawful use of drug paraphernalia.

## II

Smith contends that the evidence seized during the search of the Wood Lane property should have been suppressed because that search was based on an invalid warrant. The warrant was issued pursuant to Detective Morrison's affidavit. The affidavit set forth the observations made by the informant on January 26 when he went to the Wood Lane property, the informant's past history of informing, and the results of Detective Morrison's trip to the River Road property.

Smith challenges the warrant affidavit on several grounds. He asserts that the informant's observations cannot be used as a basis for finding probable cause because the information set forth in the affidavit was not sufficient to show that the informant was reliable. Additionally, Smith contends that the informant's observations must be stricken because he was an agent of the police, and therefore his January 26 visit to the Wood Lane property constituted an illegal search. Finally, Smith argues that Detective Morrison's trip to the River Road property with Don Young constituted an illegal search, and thus the evidence discovered at River Road should be stricken from the Wood Lane affidavit. We conclude that the informant was reliable, not a police agent, and that his observations alone were sufficient to support a finding of probable cause. Therefore, we need not address the legality of the River Road search.

In determining whether information provided by an informant establishes probable cause to issue a search warrant, Washington applies the 2–part test set forth in *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964). Under the *Aguilar–Spinelli*

test, the reliability of an informant is established by showing

> underlying circumstances from which the informant drew his conclusion so that a magistrate can independently evaluate the reliability of the manner in which the informant acquired his information; [basis of knowledge prong] and . . . underlying circumstances from which the officer concluded that the informant was credible or his information reliable [veracity prong].

*State v. Jackson,* 102 Wn.2d 432, 435, 688 P.2d 136 (1984).

 *Jackson* stated that the *basis of knowledge* prong can be satisfied by showing that the informant "personally has seen the facts asserted and is passing on firsthand information." *Jackson,* at 437. Here the Wood Lane affidavit states that "confidential reliable informant . . . observed the marijuana plants in December 1983 and was on the property on January 26, 1984 and informed your affiant that the marijuana plants and Hal–lide lights are still present and that the plants are still under cultivation." This statement shows that the informant had firsthand knowledge of the marijuana growing at 40 Wood Lane, and satisfies the *basis of knowledge* prong of the *Aguilar–Spinelli* test. A fair reading of the quoted section of the affidavit shows that the informant, while on the property on January 26, 1984, saw marijuana plants under cultivation. Any other interpretation is quixotic at best.

*State v. Helmka,* 86 Wn.2d 91, 93, 542 P.2d 115 (1975), recognized that "the magistrate is to operate in a commonsense and realistic fashion. He is entitled to draw commonsense and reasonable inferences from the facts and circumstances set forth." Further, *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982), reaffirmed that "[a]ffidavits for search warrants must be tested in a commonsense manner rather than hypertechnically as long as the basic *Aguilar/Spinelli* requirements are met." Reading this affidavit in a commonsense manner, it cannot be said that the informant did

not personally view the growing marijuana on January 26, 1984. *State v. Wolken,* 103 Wn.2d 823, 827, 700 P.2d 319 (1985). Doubts are to be resolved in favor of the warrant. *Fisher,* at 964.

■ In addition to the basis of knowledge requirement, an informant must also show his *veracity.* This requirement is met if the informant has previously provided information leading to arrests or convictions. *Fisher,* at 965. However, an informant's credibility may still be confirmed even if the information provided has not led to actual arrests or convictions. In *Fisher,* the defendants were convicted of possession of a controlled substance after a search of their residence pursuant to a warrant. The warrant was based on an affidavit which included the following:

> That within the past 72 hours a reliable informant, known to the affiant, has visited the above residence and while there observed LSD and marijuana.
> The informant is reliable in that he/she has given information regarding the drug trafficing [*sic*] and use in the past which has proven to be true and correct.
> The informant has made two controlled buys to wit: the informant was searched, given money, observed to enter and return from a residence with controlled substances purchased from within.
> The informant stated that persons who live at and visit the residence are known to conceal drugs on their persons and in their vehicles. The informant further stated that the residents [*sic*] Tom Lancaster, major sources of income were the sale of drugs and stolen property.

*Fisher,* at 964. In determining whether the affidavit satisfied probable cause requirements the court noted:

> To meet the *Aguilar/Spinelli* test the credibility of the informant must be demonstrated. The mere statement that an informant is credible is not sufficient, whereas it is almost universally held to be sufficient if information has been given which has led to arrests and convictions.
> This case lies somewhere between these two positions. Affiant stated that the informant had given him information proven to be true and correct in the past. While

this is more than drawing the conclusion that the informant is credible and admittedly less than stating the facts as to why the past information has proven to be "true and correct", it still is a factual statement—not a conclusion of the affiant. We hold in this case that it is enough to enable a neutral magistrate to determine if the informant is credible.

(Citations omitted.) *Fisher,* at 965.

In this case, the affidavit for the Wood Lane warrant included the following information relating to the informant's reliability:

2. Confidential reliable informant has in the past furnished to the Shelton Police Department at which he was paid for the information. No cases have been opened at this time.

3. Confidential reliable informant at the present is working with the Washington State Patrols Narcotics Section introducing agents into known drug traffickers and furnishing information on other Marijuana cultivation.

Confidential reliable informant has in the past week introduced your affiant to a cocaine dealer at which confidential reliable informant and your affiant purchased one–quarter ounce of cocaine and negotiated for the purchase of up to an ounce of cocaine from the same person.

Information received from other sources corroborates all of the information confidential reliable informant has furnished to your affiant.

The information set forth in the Wood Lane affidavit regarding the informant's reliability is similar to, and may be looked upon as even stronger evidence of credibility than, that set forth in the *Fisher* affidavit. Although the informant had not provided information leading to arrests or convictions, the affidavit included sufficient factual statements by which a neutral magistrate could determine that the informant was reliable. The reliability requirements of *Aguilar–Spinelli* were satisfied.

### III

Smith also contends that the Wood Lane search warrant was not supported by probable cause because it was based

on information uncovered during an illegal search of the premises by the informant. Smith asserts that the informant was an agent of the police when he looked through the skylight at 40 Wood Lane on January 26. Smith argues that the information uncovered during that search cannot be used to support a finding of probable cause because the informant was a police agent and the search was made without a warrant.

The exclusionary rule does not apply to the acts of private individuals. *State v. Wolken,* 103 Wn.2d 823, 830, 700 P.2d 319 (1985). Thus even if the informant acted illegally when he climbed upon the defendant's roof, the evidence he discovered while there need not be excluded unless the informant was acting as a government agent.

 In order to prove that a private individual was acting as a government agent, "[i]t must be shown that the State in some way 'instigated, encouraged, counseled, directed, or controlled' the conduct of the private person." *Wolken,* at 830. The Wolken test had its origins in *State v. Agee,* 15 Wn. App. 709, 713–14, 552 P.2d 1084 (1976), *aff'd,* 89 Wn.2d 416, 573 P.2d 355 (1977). *Agee* stated that "mere knowledge by the government that a private citizen might conduct an illegal private search without the government taking any deterrent action [is] insufficient to turn the private search into a governmental one." *Agee,* at 714 (citing *Lustig v. United States,* 338 U.S. 74, 79, 93 L. Ed. 1819, 69 S. Ct. 1372 (1948)).

In this case, the trial court found that the informant had suggested to Detective Morrison that he, the informant, could go onto the Wood Lane property to check the roofing he had previously done there. The court also found that Detective Morrison told the informant more than once that he could not go onto the Wood Lane property without a legitimate reason and that the informant should not trespass. During the omnibus hearing, Detective Morrison testified as follows in response to questions about his relationship with the informant.

Q. Did you direct him in any way?

A. Not—to the best of my knowledge, no.

Q. Did you ever direct him to go onto anybody's property?

A. No.

Q. Did you ever encourage him to go onto anybody's property?

A. No.

Q. Did you ever pay him to go onto anybody's property?

A. No.

Q. Did you ever direct him to go onto the property of the defendant, Wayne Smith?

A. No.

Q. Did you ever encourage him to go onto the property of Wayne Smith?

A. No.

Q. Did you ever pay him for going onto the property of Wayne Smith?

A. No.

Again during the trial, Detective Morrison testified concerning his conversation with the informant on January 27, 1984, as follows:

Q. You did know that he had a right to go onto the property?

A. He had told me earlier in our conversation that he had stated that he had roofed the house, and that the owner had told him that he could go on the property and check for leaks, or anything to be repaired at a later date. That is what I knew.

Q. But you still didn't tell him to go on that property?

A. I did not tell him to go to that property.

Q. Yet you knew he had a legitimate reason to go on the property and fix the leak?

A. Yes.

Q. If I understand your answer to a direct question, it was because of the fear of legal problems?

A. I wouldn't direct him to go on that property, because it would be trespassing if I told him. He would be working for me.

Q. And you didn't want him working for you?

A. I didn't tell him to go on that property.

Q. So there was—would it be safe to say there was a specific reason that you would not have told him to go on that property?

A. Yes.

Q. And that was because he would be working for you, or deemed working for you; is that right?

A. That's true.

The trial court made findings of fact regarding the informant's relationship with the police. These findings must be upheld if they are supported by substantial evidence. *Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn. 2d 476, 483, 670 P.2d 648 (1983). Among the findings of fact made by the trial court were the following:

12. In the affidavit for search warrant for the 40 Wood Lane property, there were sufficient grounds for the issuing magistrate to find probable cause to issue the warrant, apart from the information of the previous warrant.

. . .

30. The PUD possessed a permission form which stated on its face that the PUD has the right to go onto a power user's property to investigate possible power theft.

31. PUD 1 had completed such a permission form applying to the Route 5 property.

. . .

49. When the warrant affidavit for the Route 5 property was made, the information therein was corroborated by independent sources, including information gained by aerial and ground observation and by Detective Morrison's observation, and by Detective Morrison's discoveries on the property, plus the successful drug transaction set up by [the informant].

50. The warrant affidavit stated that [the informant] had introduced Morrison to known drug traffickers.

51. The statement in the affidavit about drug traffickers was correct, substantiated by the fact that a drug transaction had been set up by [the informant] and completed by Detective Morrison.

. . .

62. The following morning, January 26, 1984, Detective Morrison called [the informant] and told him that no contraband had been seized in the search, and that he had been unable to obtain a search warrant for 40 Wood Lane.

63. In previous conversations with Detective Morrison, [the informant] had suggested he could go onto the property at 40 Wood Lane.

64. Detectives Morrison and Peterson told [the informant] on more than one occasion that he could not go on the property at 40 Wood Lane without a legitimate reason, and that he could not go on as a trespasser.

65. [The informant] went on the 40 Wood Lane property, looked through the skylight of the residence there, and observed the interior of the residence.

66. [The informant] had a key to the 40 Wood Lane residence on January 25, 26, and 27, 1984, and used the key to shower and clean up there; further, on those dates [the informant] had permission to use the key.

67. [The informant] had performed work on the skylight at the 40 Wood Lane residence in August or September of 1983.

68. On January 26 or 27, 1984, [the informant] entered the property at 40 Wood Lane and actually observed the halide lights, the marijuana plants, and the contraband referred to in the affidavit for search warrant for 40 Wood Lane. [The informant] made his observation through a skylight.

69. The following morning [the informant] reported to Detective Morrison that he could personally confirm that there were marijuana plants on the 40 Wood Lane premises; that statement was incorporated into a second affidavit, also an exhibit in this case.

70. The Judge who signed the search warrant for 40 Wood Lane was given no information beyond the affidavit.

71. The Judge was not told [the informant's] name and was not provided with extensive information about his background, but was told that he was a reliable confidential informant who had proven reliable in the past.

. . .

73. There was sufficient information in the affidavit for the Court to infer that [the informant] had personally observed the marijuana plants.

74. In the affidavit process for 40 Wood Lane, the Judge was again told that [the informant] had previously provided to the police information for which he was paid, and that representation to the Judge was the truth.

We find no need to remand the cause to the trial court for additional findings. These findings that have been made support the trial court's conclusion that the informant was not a police agent at the time he searched the Wood Lane property. The testimony and the findings establish that the informant was not acting under or subject to the control of the police. For agency to exist there must be a manifestation of consent by the principal (the police) that the agent (the informant) acts for the police and under their control and consent by the informant that he or she will conduct themselves subject to police control. *See Turnbull v. Shelton*, 47 Wn.2d 70, 72, 286 P.2d 676 (1955); *Poutre v. Saunders*, 19 Wn.2d 561, 565, 143 P.2d 554 (1943).

The evaluation of the evidence and credibility is for the trial court absent an abuse of discretion. *State v. Wolken, supra.* Here the record reflects a conscientious effort by the detective to gather information of illegal activities while abiding by the legal restraints placed upon law enforcement officers which protect the privacy of citizens. It is a narrow line to walk at times. Appellate courts should not disturb trial court findings based upon substantial evidence and which hold that the testimony of the police was credible. In the world of secrecy in which drug trafficking is conducted, informants are essential if law enforcement is to be effective at all. To require informers to be volunteers innocent of prior contact with suspect activity or who have not sought out information for law enforcement either on their own initiative or because law enforcement has expressed a curiosity about certain criminal activity, is to set forth a naive and fanciful rule. *Wolken,* at 830, states that it must be shown "that the State in some way 'instigated, encouraged, counseled, directed, or controlled' the conduct of the private person" citing *State v. Mannhalt,* 33 Wn. App. 696, 702, 658 P.2d 15, *review denied,* 100 Wn.2d 1024 (1983).

This statement does not stand for the broad proposition that the authorities cannot work with informers who may be informing to benefit themselves and not out of patriotic

fervor. When the genesis of the *Wolken* statement is traced backward in time from *Mannhalt* to *State v. Agee,* 15 Wn. App. 709, 714, 552 P.2d 1084 (1976), *aff'd,* 89 Wn.2d 416, 573 P.2d 355 (1977), the true basis for a restriction on the use of informants is found to be that the State must not have "a private party do for it that which it is forbidden to do itself." Citing *United States v. Mekjian,* 505 F.2d 1320 (5th Cir. 1975), and *United States v. Clegg,* 509 F.2d 605 (5th Cir. 1975). Consideration of the testimony concerning compliance with the *Aguilar–Spinelli* requirements makes it clear that the officer did not have the informer do what the detective could not do. The informer did what he believed he could lawfully do and later told the detective about what he saw. As stated in *Mekjian,* at 1328:

> "The decisive factor in determining the applicability of the *Byars* [*v. United States,* 273 U.S. 28, 71 L. Ed. 520, 47 S. Ct. 248 (1927)] case," making a search a federal one, "is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means." . . .
>
> The decision here, then, finally revolves around the factual situation with regard to government participation and government knowledge that an illegal search was being conducted and that the government would be the beneficiary of such misconduct. . . . The meaning of the statements made with regard to promises to send information depend upon the context in which they were made and the credibility of witnesses. This appraisal was a role most appropriate for the trial judge. We cannot say that his finding of non–governmental involvement on this record was clearly erroneous.

(Footnotes omitted.)

We conclude that the informant was reliable and did not act as an agent of the police. As a result, his observations alone may be used as a basis for finding probable cause for the issuance of the Wood Lane warrant. We need not address whether the other information set forth in the affidavit should have been excluded.

We affirm the convictions.

DOLLIVER, DORE, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.

UTTER, J. (dissenting)—The majority improperly concludes that the informant was reliable and did not act as an agent of the police. Majority opinion, at 662. This conclusion must be based upon the affidavit supplied to obtain the search warrant. The affidavit fails to provide sufficient information to form the basis for an independent opinion as to the reliability of the informant under the 2-part test set forth in *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); and *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984). The fruits of the Wood Lane search are therefore inadmissible.

Even if the majority's conclusion that the informant's reliability is established, the trial court's findings of fact are nonetheless insufficient to support the majority's conclusion that the informant was not an agent of the State. For these reasons, this case must be remanded to determine whether the informant acted under the direction, control, instigation and encouragement of law enforcement officials when obtaining information about activities at the Wood Lane property. *State v. Wolken,* 103 Wn.2d 823, 830, 700 P.2d 319 (1985).

The test in Washington for determining whether information provided by an informant establishes probable cause sufficient to support the issuance of a search warrant is whether the affidavit establishes the reliability of the informant by setting forth facts that establish the informant's basis of knowledge and veracity. *State v. Jackson, supra* at 435. The Wood Lane affidavit fails to satisfy the basis of knowledge prong.

"The basis of knowledge prong requires the affidavit to recite the manner in which the informant gathered his information." *State v. Gunwall,* 106 Wn.2d 54, 70-71, 720

P.2d 808 (1986) (citing *State v. Lair,* 95 Wn.2d 706, 709, 630 P.2d 427 (1981); *State v. Smith,* 28 Wn. App. 387, 391, 624 P.2d 191 (1981)). "To satisfy the 'basis of knowledge' prong, the informant must declare that he personally has seen the facts asserted and is passing on firsthand information." *Jackson,* at 437. *Spinelli v. United States,* 393 U.S. at 425 (White, J., concurring).

The Wood Lane affidavit fails to show how the informant reached the conclusion "that the marijuana plants and Hallide lights are still present and that the plants are still under cultivation." The raw facts upon which the informant based his conclusion, how the informant obtained those facts, and what precisely did he see or hear or smell or touch firsthand must be established. *State v. Smith, supra; Stanley v. State,* 19 Md. App. 507, 531, 313 A.2d 847 (1974). These are the questions a magistrate must ask when determining whether *Aguilar–Spinelli*'s basis of knowledge prong has been satisfied if he "is to perform his detached function and not serve merely as a rubber stamp for the police." *United States v. Ventresca,* 380 U.S. 102, 109, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965).

The affidavit's recitation that "informant . . . observed the marijuana plants in December 1983 and was on the property on January 26, 1984" fails to show the raw facts upon which informant based his conclusion, much less how the informant obtained those facts. Based on the affidavit, which was the only information before the judge who signed the search warrant for 40 Wood Lane, it is pure conjecture to conclude that the informant personally observed marijuana on his January 26 visit to the property. "[A]n informant's assertion that drugs were present in premises where he had recently been does not show he actually saw the drugs." 1 W. LaFave, *Search and Seizure* § 3.3(d), at 662 (2d ed. 1987). One could assume the informant based his conclusions on his sense of smell, an overheard conversation, or ESP. Based upon the information contained in the affidavit, it is impossible for a magistrate to "independently evaluate the reliability of the manner in

which the informant acquired his information" as required by Const. art. 1, § 7. *Jackson,* 102 Wn.2d at 435. *See Aguilar,* 378 U.S. at 114; *Spinelli,* 393 U.S. at 413. The basis of knowledge prong of the *Aguilar–Spinelli* test is not satisfied. Thus, there was insufficient showing of probable cause to justify issuance of a search warrant.

Moreover, I cannot agree with the majority's conclusion that the trial court's findings of fact were sufficient to resolve the issue whether the informant was a government agent when he visited the Wood Lane property on January 26, 1984. "Direction and control" are not the only tests of agency in these cases. It is sufficient to establish agency that the police officers "instigated or encouraged" the conduct in question. *Wolken,* at 830.

The trial court found that the informant had suggested to Detective Morrison that the informant could go onto the Wood Lane property to check the roofing he had previously done there. It also found that Morrison told the informant he could not go onto the Wood Lane property without a legitimate reason and could not trespass. These findings do not address the issue of whether the police encouraged the informant to go on the roof by stating they had been unable to come up with sufficient evidence to obtain a search warrant. To suggest that the informant's reason for going on the roof late at night was to check the roofing stretches credulity. If the police instigated or encouraged this conduct then the search was illegal. There must be specific findings on this issue and I would remand for this purpose.

PEARSON, C.J., and BRACHTENBACH, J., concur with UTTER, J.

Reconsideration denied September 14, 1988.