[Nos. 12146-1-III; 12147-0-III; Division Three. July 5, 1994.]
12148-8-III.

THE STATE OF WASHINGTON, *Appellant,* v. RAMIRO M.
SANCHEZ, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. RAFAEL A.
VEGA, *Respondent.*

THE STATE OF WASHINGTON, *Appellant,* v. JOSE LUIS
ARMENTA, *Respondent.*

*John D. Knodell, Prosecuting Attorney,* for appellant.
*Eric R. Weston,* for respondents.

SCHULTHEIS, J. — The trial court granted Defendants' joint motion to suppress holding the facts recited in a search warrant affidavit were insufficient to support a finding of probable cause that cocaine would be found in their home. The State contends: (1) the court erred in failing to draw reasonable inferences based on the totality of circumstances; and (2) this court should adopt the good faith doctrine announced in *United States v. Leon,* 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). We affirm.

On November 3, 1991, police responded to a suicide call in Quincy, Washington. Oscar Schuh had injected an eighth ounce of cocaine. Police expressed curiosity about his source and Mr. Schuh volunteered he obtained it from "Joe" at a house located near a certain park. He described the house as "the one where all the drive-by shootings had occurred and where grass had recently been planted on an adjacent lot". Mr. Schuh did not know the address. Officer Scott Jones relayed this information to Detective David Matney. Based on the description provided, Detective Matney suspected the address of the house to be 10 "C" Street and sought a telephonic warrant.

The basis of Mr. Schuh's knowledge and his credibility are not seriously contested. At issue is whether the facts support an inference that additional cocaine would be found in the house. The affidavit recites four facts: (1) Mr. Schuh obtained cocaine from Joe at a certain house at some undisclosed time in the past; (2) the house had been raided

the previous March and drugs were found; (3) during the prior search, police observed the house was marred by shotgun blasts; and (4) unidentified citizens had lodged unspecified complaints about suspected drug activity at the residence.

A warrant issued and evidence of cocaine trafficking was seized. Immediately prior to trial, Defendants challenged the warrant on staleness grounds because the affidavit failed to recite when the sale took place. The trial judge concluded the transaction likely occurred in the "not too far gone past". However, the court questioned whether a single buy from a largely unidentified seller yielded probable cause to believe more cocaine would be found in the house. Concluding it did not, the court granted the suppression motion.

██ This is a "some-means-more" case in which past activity is used to infer the probability that the same activity is ongoing. In colloquy during the suppression hearing, the court and counsel expressed concern over the lack of a bright line rule in this area and wondered aloud if several unpublished opinions issued by this division were perhaps inconsistent. Unpublished opinions have no precedential value. *State v. Fitzpatrick*, 5 Wn. App. 661, 668, 491 P.2d 262 (1971), *review denied*, 80 Wn.2d 1003 (1972). However, they unavoidably have instructive value to the trial judge whose ruling was under scrutiny. The opinions discussed in colloquy fit this category. They will not be addressed,[1] and suffice it to say that they apparently created some confusion concerning the permissible scope of the presumption that some means more.

---

[1]We have considered the advisability of discussing these decisions. There might be some marginal value in doing so, but this could be misconstrued as a signal that it is acceptable practice to cite unpublished dispositions. It is not. *State v. Sigman*, 118 Wn.2d 442, 444 n.1, 826 P.2d 144 (1992). Technically, the rules prohibit the citation of unpublished decisions only when relied upon as authority. RAP 10.4(h). We have read the rule more broadly, and disapprove of including such citations in briefing for any purpose. *State v. Ross*, 20 Wn. App. 448, 455 n.5, 580 P.2d 1110 (1978), *review denied*, 91 Wn.2d 1024 (1979). The only exception is when the decision is relevant under the doctrines of law of the case, res judicata or collateral estoppel. *See Island Cy. v. Mackie*, 36 Wn. App. 385, 391 n.3, 675 P.2d 607, *review denied*, 101 Wn.2d 1008 (1984).

This is one area of the law which does not lend itself to bright lines:

> Sometimes the question comes down to whether probable cause that certain objects or a certain quantity of a substance is at a particular place may be said also to show that more of the same is probably there, so as to justify issuance of a warrant also authorizing a search for the additional amount. On occasion the some-means-more inference may be permissible, but this determination must be made on a case-by-case basis.

(Footnotes omitted.) 2 Wayne R. LaFave, *Search and Seizure* § 3.7(d), at 113 (2d ed. 1987).

A bright line test would necessarily result in one of two rules: either "some never means more", or "some always means more". The first bridge has been crossed. When circumstances indicate a future drug transaction involving a given source is intended, it is manifestly reasonable to assign weight to the fact that a prior sale involving the same source has already occurred. *State v. Maffeo*, 31 Wn. App. 198, 199, 642 P.2d 404, *review denied*, 97 Wn.2d 1012 (1982). The second bridge is more problematic.

When the evidence reflects multiple sales at the same location accompanied by boasts of access to prodigious quantities of cocaine from that location, there may be probable cause to believe the boasts true. *State v. Mejia*, 111 Wn.2d 892, 894-96, 766 P.2d 454 (1989). When a suspect contemplates a sizable transaction in the immediate future with the drugs to be obtained from a certain location, and the transaction is preceded by a sample sale with the drugs obtained from that same location, and the sample sale actually occurs, there may be probable cause to believe the larger sale could be completed as well. *State v. Maffeo*, 31 Wn. App. at 199; *see also State v. Gunwall*, 106 Wn.2d 54, 56-58, 71-73, 720 P.2d 808, 76 A.L.R.4th 517 (1986). When police officers recognize growing marijuana plants on the windowsill of an apartment, there may be probable cause to believe the premises contain processed marijuana as well. *State v. Helmka*, 86 Wn.2d 91, 93, 542 P.2d 115 (1975). When a suspect himself provides indicia that his residential address is also his "business" address, probable cause may exist to search the residence.

*State v. Gross*, 57 Wn. App. 549, 553, 789 P.2d 317, *review denied*, 115 Wn.2d 1014 (1990).

■ Turning to the facts at hand, "Joe" was otherwise unidentified. He may or may not have resided at the house. As observed by the trial judge, it is equally plausible he may have used the premises as a drop for his transaction with Mr. Schuh. The fact the house was raided 7 months earlier and drugs found is of no weight absent knowledge of who lived there at the time. Moreover, as noted by the trial judge, the drugs then found were marijuana and amphetamine, not cocaine or heroin which Respondents allegedly deal in. The import of the shotgun blasts is likewise tenuous. They were noticed during the prior raid and there is no showing of who resided there at the time. Finally, nebulous complaints by unidentified citizens over what they perceived to be drug activity fail the basis of the knowledge test. *Cf. State v. Stone*, 56 Wn. App. 153, 156, 782 P.2d 1093 (1989), *review denied*, 114 Wn.2d 1013 (1990). Nor can credibility be tested even under the relaxed standards applicable to citizen informants. *State v. Wilke*, 55 Wn. App. 470, 477-79, 778 P.2d 1054, *review denied*, 113 Wn.2d 1032 (1989).

■ This case is factually weaker than *Mejia, Maffeo, Helmka* and *Gross*. The house was tainted. Probable cause existed to believe Mr. Schuh obtained cocaine there. A reasonable police officer would justifiably be interested in ascertaining what else might be found in the house. To that end, the reasonable police officer would determine who owned the house, who resided there, what their criminal backgrounds were, and whether the same persons resided there the preceding March. A reasonable police officer might try to arrange a controlled buy. *Mejia*, 111 Wn.2d at 894-96; *Gunwall*, 106 Wn.2d at 56-58; *Maffeo*, 31 Wn. App. at 199. He might surveil the premises. *State v. Manly*, 85 Wn.2d 120, 121-24, 530 P.2d 306, *cert. denied*, 423 U.S. 855 (1975); *State v. Raymer*, 61 Wn. App. 516, 517-18, 810 P.2d 1383, *review denied*, 117 Wn.2d 1022 (1991). He might document complaints from citizens with objective facts detailing the activities observed. *See State v. Ludvik*, 40 Wn. App. 257, 259-60, 698 P.2d 1064 (1985). There are any number of sup-

porting facts a reasonable police officer might marshal to convince a magistrate that a fair probability existed that additional drugs would be found. This record is devoid of such facts. There is only a showing that a single sale was made by a largely unidentified individual, at an unknown time, who may or may not have resided at the house. The trial court properly suppressed on this inadequate showing.

■ The State urges that even though Washington takes a more solicitous approach to privacy issues than does the Fourth Amendment, there is no reason to penalize law enforcement when the error is that of the magistrate and not the officer. According to the State, it is thus time to adopt the "good faith" doctrine announced in *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). We considered this issue in *State v. Crawley*, 61 Wn. App. 29, 34-35, 808 P.2d 773, *review denied*, 117 Wn.2d 1009 (1991). The fact that the State's policy arguments were previously assessed and found wanting does not forever close the door to revisiting the topic in light of evolving notions of criminal jurisprudence, but a review of *Crawley* and the authorities upon which the decision was based suggests no need to do so at this time. The opinion closed on a note of some certitude. "Until the United States Supreme Court has overruled *White* and *Gunkel*, the exclusionary rule stated therein remains valid."[2] *Crawley*, at 35. Neither has been overruled, and neither has been receded from by our Supreme Court. *See State v. Young*, 123 Wn.2d 173, 196, 867 P.2d 593 (1994); *State v. Huft*, 106 Wn.2d 206, 209-12, 720 P.2d 838 (1986).

Affirmed.

SWEENEY, A.C.J., and MUNSON, J., concur.

Reconsideration denied August 19, 1994.

Review denied at 125 Wn. 2d 1022 (1995).

---

[2]*State v. White*, 97 Wn.2d 92, 109-10, 640 P.2d 1061 (1982); *State v. Gunkel*, 188 Wash. 528, 534, 63 P.2d 376 (1936).