IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32097-9-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL R. WILLIAMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Michael Williams appeals his conviction for possessing a controlled substance (methamphetamine) with intent to deliver. He contends the trial court erred in denying his CrR 3.6 evidence suppression motion. He argues his mother, Tamatha Root, was functioning as a state agent when giving his backpack to an investigating officer at Mr. Williams' rollover injury accident scene. Given the uncontested findings of fact, the court did not err in concluding Ms. Root acted voluntarily. We affirm.

FACTS

On June 12, 2012, Mr. Williams rolled his parents' truck. Spokane Police Officer Dustin Howe responded to the accident scene where Mr. Williams was being treated by medics. The officer spoke to Mr. Williams and asked for his driver's license, registration, and proof of insurance for the accident report. Mr. Williams did not have

the information on him. Ms. Root was standing near Mr. Williams. Officer Howe asked Ms. Root if she knew where her son's driver's license, registration, and insurance were. She responded that the documents were either on her son, in the vehicle, or in his backpack. After searching for the documents in the spilled over debris from the truck, Officer Howe informed Ms. Root he could not find the documents. Ms. Root stated the items must be in the backpack. Officer Howe expected Ms. Root to check in Mr. Williams' backpack; however, she handed the backpack to him and asked him to look in it. As soon as Ms. Root handed over the backpack, Officer Howe could see a number of baggies containing what he believed was methamphetamine in an open backpack pocket. The pocket contained clear plastic baggies, a digital scale, and a pipe.

The State charged Mr. Williams with one count of possession of methamphetamine with intent to deliver. Mr. Williams moved to suppress the evidence under CrR 3.6, arguing it was discovered as the result of a warrantless search and Ms. Root lacked authority to consent to the search. The State responded the officer had not coerced Ms. Root into handing over the backpack or requested to search the backpack. The State argued, "[Officer Howe] was asked to search by Ms. Root. It was open view, plain view, because he had a right to be there." Report of Proceedings at 74. The court found the officer's testimony more credible than Ms. Root's testimony, and found and concluded, "Law enforcement did not initiate or request a search in this case. The officer was given the backpack by Ms. Root and told to look in it. That is not a violation

2

of any constitutional rules." Clerk's Papers at 147. Following a bench trial, the court convicted Mr. Williams as charged. He appealed.

## ANALYSIS

The issue is whether the trial court erred in denying Mr. Williams' CrR 3.6 motion to suppress the evidence seized. Mr. Williams contends the trial court should have suppressed the drug evidence because his mother was acting as a state agent when she handed the backpack to Officer Howe and did not consent to any search. At the outset, we note Mr. Williams did not raise any state agent arguments below. In general, we do not address issues raised for the first time on review. RAP 2.5(a). His sole focus at the suppression hearing was consent. We examine his arguments in that context.

We review a suppression ruling to determine whether substantial evidence supports the challenged findings of fact and whether the findings of fact support the conclusions of law, which are reviewed de novo. *State v. Armenia*, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). Here, they do.

The Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution both protect an individual's right against unreasonable searches and seizures by police. *State v. Young*, 123 Wn.2d 173, 178, 867 P.2d 593 (1994). Article I, section 7 of the Washington Constitution specifically protects "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984) (Harlan, J., dissenting)). A warrantless search or seizure is

3

considered per se unconstitutional unless it falls within one of the few exceptions to the warrant requirement. *State v. Ladsen*, 138 Wn.2d 343, 349, 979 P.2d 833 (1999).

"As a general rule, neither state nor federal constitutional protections against unreasonable searches and seizures are implicated, without state action." *State v. Carter*, 151 Wn.2d 118, 124, 85 P.3d 887 (2004). Thus, the Fourth Amendment and article I, section 7 apply only to searches by state actors, not those of private actors. *Carter*, 151 Wn.2d at 124. However, constitutional protections may apply "if the private person functions as an agent or instrumentality of the State." *State v. Clark*, 48 Wn. App. 850, 856, 743 P.2d 822 (1987). In other words, "law enforcement officers cannot use private citizens to obtain evidence without a search warrant where a search warrant would otherwise be required." *State v. Swenson*, 104 Wn. App. 744, 754, 9 P.3d 933 (2000). The defendant bears the burden of showing a private citizen who provides evidence to the government was acting as agent of the government. *State v. Clark*, 48 Wn. App. 850, 855, 743 P.2d 822 (1987).

Whether a person is acting as a state agent depends on the particular facts. *Clark*, 48 Wn. App. at 856. The government must be directly involved in the search or indirectly involved as an encourager or instigator of the private person's actions. *Id.* A private citizen acts as a governmental agent of the state where the state has in some way "instigated, encouraged counseled, directed, or controlled" the actions of that individual. *State v. Agee*, 15 Wn. App. 709, 713-14, 552 P.2d 1084 (1976), *aff'd*, 89 Wn.2d 416, 573 P.2d 355 (1977). Two key considerations in the "state agent" analysis

4

are whether the government was aware of and acquiesced in the intrusive conduct and whether the private citizen intended to assist law enforcement or further the private citizen's own ends. *Clark*, 48 Wn. App. at 856. "[T]here is no bright line that distinguishes instances of 'government' conduct from instances of 'private' conduct." *United States v. Miller*, 688 F.2d 652, 656 (9th Cir. 1982). Not all contacts between police and a private individual make that person a state agent. *State v. Walter*, 66 Wn. App. 862, 866, 833 P.2d 440 (1992). An attempt to aid the government does not change a private search into a governmental search. *State v. Ludvik*, 40 Wn. App. 257, 263, 698 P.2d 1064 (1985).

Here, the uncontested suppression findings are verities on appeal. *State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994). Ms. Root told officers her son's driver's license, registration and insurance card were either on her son, in the vehicle, or in his backpack. Ms. Root possessed her son's backpack. Officer Howe knew Mr. Williams did not have the information. He went over the accident scene and checked the spilled-over debris. He did not find the documents. The officer returned to Ms. Root and told her he could not find the documents and then Ms. Root told the officer they must be in the backpack. Officer Howe expected she would look in the backpack for the items. But instead, Ms. Root handed him the backpack and told him to look for the items: "The court finds that Ms. Root did ask the officer to look in the backpack." CP at 147. When Ms. Root handed Officer Howe the backpack, he immediately noticed one of the pockets was unzipped. He could see several clear plastic baggies with a blue

crystalline substance that the officer, based on his training and experience, believed to be methamphetamine. In the pocket were several clear plastic baggies, a black digital scale and a clear glass drug smoking pipe. The officer did not ask for consent to search the backpack.

Given the facts, the trial court did not err in concluding Ms. Root voluntarily handed over the backpack to Officer Howe. The spontaneous act was not done in response to any request for consent to search the backpack. The mere purpose to aid the government is not enough to turn an otherwise private search into a government search. *State v. Sweet*, 23 Wn. App. 97, 99, 596 P.2d 1080 (1979). Nothing in the record indicates Ms. Root was working for the police or otherwise in a position to be a state agent. The methamphetamine was in open view; contraband viewed when an officer is standing in a lawful vantage point is not protected. *State v. Neeley*, 113 Wn. App. 100, 109, 52 P.3d 539 (2002). Officer Howe immediately observed the methamphetamine in an open pocket when Ms. Root handed over the backpack. The officer was permitted to seize the contraband and view the remaining evidence.

In conclusion, based on the uncontested findings of fact, Mr. Williams failed to show his mother acted as a government agent when voluntarily handing Mr. Williams' backpack to the officer. The trial court found the officer did not ask to search the backpack and thus, consent was not requested and is not an issue here. Because the contraband was in open view, no unlawful search occurred. The trial court did not err in denying Mr. Williams' CrR 3.6 suppression motion.

6

No. 32097-9-III
*State v. Williams*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Brown, A.C.J.

WE CONCUR:

Korsmo, J.

Lawrence-Berrey, J.

7