IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent, v. CHRISTOPHER HOWARD CONKLIN, Appellant. | No. 84634-5-I DIVISION ONE UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Christopher Conklin appeals from multiple felony convictions for assault in the first degree, burglary in the first degree, kidnapping in the first degree, and unlawful possession of a firearm in the second degree. We accept the State's concessions as to instructional, evidentiary, and sentencing errors on all convictions except for unlawful possession of a firearm in the second degree and the imposition of the DNA[1] fee at sentencing. Accordingly, we remand for the trial court to vacate the erroneous convictions, resentence Conklin on the remaining charge, and determine whether the DNA fee is proper.

---

[1] Deoxyribonucleic acid.

FACTS

Christopher Conklin was charged with two counts of assault in the first degree, one count of burglary in the first degree, two counts of kidnapping in the first degree, and one count of unlawful possession of a firearm in the second degree. All of the charges except unlawful possession of a firearm carried additional firearm sentencing enhancements. Prior to trial, Conklin filed motions in limine seeking to prohibit the State from introducing in-court identifications of Conklin by the two named victims. He argued the separate pretrial identification procedures used with each witness were impermissibly suggestive. The trial court denied the motion with regard to witness Arlen Stebbins but reserved the issue as to witness John Fryer. During trial, the State did not seek an in-court identification from Fryer. The jury convicted Conklin on all charges.

Conklin timely appealed.

ANALYSIS

I.      State's Concessions of Error and Issues for Remand

Conklin's opening brief assigned error to the trial court's rulings on the identification procedures used with each of the named victims and the imposition of the DNA fee at sentencing. Conklin then filed a supplemental brief that raised several instructional and evidentiary challenges to the kidnapping, assault, and burglary charges. The State properly conceded error on all issues except those relating to identification by the witnesses and, as such, we only briefly analyze the conceded errors here.

The State expressly agrees with the argument and authority set out in Conklin's supplemental brief. Accordingly, the charges of assault in the first degree with firearm enhancements must merge with those of kidnapping in the first degree. Under the double jeopardy clause, the State may not impose multiple punishments for the same offense. State v. Berg, 181 Wn.2d 857, 864, 337 P.3d 310 (2014). Courts utilize the merger doctrine "'to determine whether the Legislature intended to impose multiple punishments for a single act which violates several statutory provisions.'" Id. (quoting State v. Vladovic, 99 Wn.2d 413, 419 n.2, 662 P.2d 853 (1983)). "Even if crimes would otherwise merge, they can be punished separately if they had an independent purpose or effect." State v. Davis, 177 Wn. App. 454, 465, 311 P.3d 1278 (2013). The parties are in accord that the State relied on the acts of shooting at Fryer and Stebbins as a basis for the elements of assault and the "intent to inflict bodily injury" element of kidnapping. Conklin further notes there was no independent purpose or effect because the State argued the assault was intended to force Fryer and Stebbins into a vehicle as a basis for the kidnapping conviction; no other purpose or effect of the shooting was argued or presented. To avoid a double jeopardy violation, the assaults must merge with the kidnapping charges.

Conklin next avers, and the State concedes, that his convictions for kidnapping in the first degree must then be reversed because the State did not provide sufficient evidence to support both of the alternative means. "When a defendant challenges the sufficiency of the evidence in an alternative means case, appellate review focuses on whether 'sufficient evidence supports each

alternative means.'" State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012) (quoting State v. Kintz, 169 Wn.2d 537, 552, 238 P.3d 470 (2010)). Under Washington law, there are five alternative means under which a jury may find a person guilty of kidnapping in the first degree. RCW 9A.40.020(1).

Here, the court instructed the jury that it could find Conklin guilty of kidnapping if it found he intentionally abducted Stebbins with the intent to either: (1) inflict bodily injury, or (2) inflict extreme mental distress. The parties agree there is insufficient evidence to support the second alternative means, that Conklin intended to inflict extreme mental distress. An intent to inflict extreme mental distress "is an intention to cause more mental distress than a reasonable person would feel when being restrained by the threat of deadly force," while the analysis of the level of distress focuses on "the mental state of the defendant rather than the actual resulting distress." State v. Garcia, 179 Wn.2d 828, 843, 318 P.3d 266 (2014). The State concedes that, even in the light most favorable to its position, the statements regarding the kidnapping charges that it relied upon in closing argument are insufficient to demonstrate an intent to inflict more extreme emotional distress than a reasonable person would feel when being restrained by threat of deadly force.

Conklin next contends his conviction for burglary in the first degree must be reversed because the jury was instructed on an uncharged alternative means. Because this is a manifest error affecting a constitutional right, we may review this assignment of error for the first time on appeal. State v. Chino, 117 Wn. App. 531, 538, 72 P.3d 256 (2003). "Generally, the crime upon which the jury is

instructed is limited to the offense charged in the information," except where a jury is instructed on a lesser included offense. Id. at 539. If the State omits an alternative means of a crime in the information, "it is error for the trial court to instruct the jury on uncharged alternatives, regardless of the strength of the trial evidence." Id. at 540.

The State charged Conklin with burglary in the first degree, alleging he "unlawfully and feloniously, with intent to commit a crime against a person or property therein, enter[ed] or remain[ed] unlawfully in a building" while armed with a deadly weapon. However, at trial, the court instructed the jury it could find Conklin guilty of burglary in the first degree if it found that he "was armed with a deadly weapon or assaulted a person." (Emphasis added.) While this "error may be harmless if other instructions clearly and specifically define the charged crime," that is not the case here. See Id. at 540. The State concedes the court erred in instructing the jury on an uncharged alternate means and that reversal is necessary.

Finally, the State agrees that remand is appropriate so that the trial court may determine whether Conklin has already paid the mandatory DNA fee pursuant to a prior felony conviction. RCW 43.43.7541 requires that every sentence for a felony "must include a fee of one hundred dollars unless the state has previously collected the offender's DNA as a result of a prior conviction." The trial court found Conklin indigent and waived all discretionary fines; if it concludes on remand that Conklin previously paid the DNA fee, it should be stricken from the judgment and sentence.

We accept the State's concessions on these errors and remand for the court to resentence Conklin after merging the charges of assault in the first degree with those of kidnapping and vacating the convictions for kidnapping in the first degree and burglary in the first degree. On remand, the court should also determine whether the DNA fee is appropriate here or should be waived as previously paid.

II.      Witness Identification

Conklin also assigns error to the trial court's handling of his pretrial motions to suppress an identification by Fryer obtained using a "show-up" procedure, and any in-court identification of Conklin by Stebbins. Because the State relied on the testimony of both Fryer and Stebbins to prove Conklin unlawfully possessed a firearm, now the only remaining conviction, we address each argument in turn.

We review decisions on the admissibility of evidence for an abuse of discretion. State v. Birch, 151 Wn. App. 504, 514, 213 P.3d 63 (2009). A trial court abuses its discretion if its decision is based on untenable grounds or untenable reasons. Id. Under the due process clause of the federal constitution, eyewitness identification evidence must be excluded if it: "(1) was obtained by an unnecessarily suggestive police procedure and (2) lacks reliability under the totality of the circumstances." State v. Derri, 199 Wn.2d 658, 673-74, 511 P.3d 1267 (2022).

A.     Show-Up Identification

Conklin first argues Fryer's identification of Conklin as one of the perpetrators should have been suppressed because the pretrial "show-up" identification procedure was impermissibly suggestive.[2]  "Show-up identification is typical shortly after a crime occurs when police show a suspect to a witness or victim."  Birch, 151 Wn. App. at 513.  Show-up procedures are "not per se impermissibly suggestive," rather, the defendant must demonstrate "that the procedure was unnecessarily suggestive."  State v. Guzman-Cuellar, 47 Wn. App. 326, 335, 734 P.2d 966 (1987).  However, we need not analyze whether Conklin has met this burden because Fryer never identified Conklin in court.

The day after Fryer testified about participating in a show-up identification of a suspect on the same day as the incident, the court asked the prosecutor if he intended "to ask Mr. Fryer whether he recognizes either of the defendants;" the prosecutor confirmed he would not be seeking such an identification.  The court stated, "Okay. Then that won't be an issue."  Because there was no in-court identification admitted, there is no error.  While Fryer described participating in the show-up, he never connected the show-up, or any description of the suspects he saw, to Conklin.[3]  Conklin fails to demonstrate a basis for relief on this challenge.

---

[2] While Conklin frames this assignment of error as the trial court denying his motion to suppress, the record reflects that the court reserved on the issue.  The court never made a subsequent ruling (written or oral) granting or denying the motion.

[3] At trial, the State informed the judge that it would not seek to elicit an in-court identification from Fryer, and it did not do so during Fryer's testimony.  However, in its closing argument, the State asserted that Fryer identified Conklin the morning of the incident in the police show-up procedure.  While there is no testimony to support this statement, Conklin does not assign error to this comment and, as such, the issue is not before us.

B.   Photo Montage Identification

Conklin also argues the court should have suppressed the in-court identification by Stebbins because the pretrial photo montage identification by law enforcement was impermissibly unreliable.  He asks us to revisit the case State v. Knight, 46 Wn. App. 57, 729 P.2d 645 (1986).  There, Division Two of this court held that where a pretrial photographic identification procedure is impermissibly suggestive due to the actions of private citizens, exclusion is not required.  46 Wn. App. at 59.  Rather, suppression is only necessary where the State "'instigated, encouraged, counseled, directed, or controlled the conduct.'" Id. at 59-60 (quoting State v. Agee, 15 Wn. App. 709, 713-14, 552 P.2d 1084 (1976)).  Conklin does not argue that the State controlled or directed the pretrial conduct, but rather that changes to information access and social media necessitate new guidance.  We disagree.

"An out-of-court photographic identification violates due process if it so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification."  State v. Vickers, 148 Wn.2d 91, 118, 59 P.3d 58 (2002). Here, Conklin contends the police photo montage procedure was impermissibly suggestive because, prior to viewing the montage, Stebbins's wife "had used the county jail roster to learn the names of the individuals arrested in connection with the incident," then "used social media to find photos of Mr. Conklin . . . and showed them to Stebbins."  Conklin also notes that Stebbins described the suspect on the night of the incident as having "orange blond" hair and a "blond, more blonder mustache."  The officer who created the photo montage did not add

blond hair or a blond mustache in the search criteria, though he stated "it may have already been defaulted to there."

Conklin roots this challenge in Stebbins's exposure to the results of his wife's online research prior to the police photo montage. This alone is insufficient to demonstrate the procedure used by police was unnecessarily suggestive. Rather, the private investigation by Stebbins's wife goes to the weight, not the admissibility, of the identification he later made when police presented the photo montage. Conklin had the opportunity to cross-examine Stebbins on the procedure, including the change in his description of the alleged intruder, and the record reflects that he did so at length. Stebbins admitted that, prior to viewing the police montage, he "viewed some photographs that [his] wife found" based on names published by the State on "the jail roster." Stebbins also acknowledged that Conklin, at the time of trial, had dark hair, a dark mustache, and a dark beard. Stebbins conceded that, in his interview with officers only hours after the incident, he identified the alleged intruder as "a man with orange-blond hair" and a "blonder than blond mustache."

Conklin fails to meet his burden to demonstrate that the photo montage procedure utilized by law enforcement was unnecessarily suggestive. Further, he was able to cross-examine Stebbins at length about his wife's outside research and the inconsistencies in his various identifications and descriptions. As such, the court did not abuse its discretion in admitting the eyewitness identification evidence from the police photo montage.

Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

_____ Hazelrigg, A.C.J.

WE CONCUR:

_____ Coburn, J.

_____ Chung, J.