IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>MECCA KAY BERKINS,<br><br>                    Appellant. | No. 88027-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DíAZ, J. — Mecca Kay Berkins appeals the sentence imposed upon her, after pleading guilty to vehicular homicide. Berkins, who is Black, argues that resentencing is required because racially charged comments in a victim impact statement prejudicially violated her constitutional right to a fair proceeding. While we must be vigilant of such statements, we conclude that the improper comments did not influence the court's decision to impose a midpoint standard range sentence. And we decline Berkins' request to extend the per se prejudice standard for claims of race-based *prosecutorial* misconduct to claims involving victim impact statements. We therefore affirm.

## I.          BACKGROUND

On October 7, 2023, Berkins was driving over 100 miles per hour on the wrong side of State Route 16 when she struck and killed motorcyclist Alicia Perrin. Approximately five months later, Berkins pleaded guilty as charged to vehicular homicide committed while under the influence (DUI). Berkins had a prior conviction for DUI in 2008. As part of a plea agreement, the parties jointly recommended a low end standard range

sentence of 78 months of incarceration, with a 24 month mandatory enhancement, due to Berkins' prior DUI history.

At sentencing, the court reviewed Berkins' statement on plea of guilty. After accepting Berkins' plea, and hearing from the State, the court then invited victim impact statements from Perrin's friends and family. One of Perrin's childhood friends submitted a written statement and repeated it nearly verbatim at the hearing. In relevant part, Perrin's friend stated:

> Alicia was a once-in-a-lifetime person. She had a spark and she made all those around her feel so loved and seen. What this *animal* took from the world is immeasurable. I think given her past criminal record and her blatant lack of empathy or accountability for her incredibly senseless actions, she should be locked up for as long as humanly possible. Why give her another chance to put another family through the agony we have been living? Who knows who she will kill when she's out because we all know that she's not done drunk driving? What I wouldn't trade to have Alicia here right now and that *animal* be the one who was instantly removed from everyone that she knows and loves. But nothing's going to bring back the vivacious and remarkable woman we all lost at the hands of that *animal*.

(Emphasis added.)

At that point, defense counsel objected to Perrin's friend's language, stating, "Excuse me. She has a right to speak, but my client has a right to be treated with dignity in this courtroom." The court noted the objection, and Perrin's friend concluded her statement without referring to Berkins as an "animal" again. The court then stated: "[F]or purposes of the record, this Court does not get influenced by emotional, heated language, and I certainly would not adopt any of that emotional and heated language, but I do want to give the victim's family the opportunity to express themselves, but just know that I'm able to filter that out." Defense counsel responded, "Of course, Your Honor. Thank you." Berkins' supporters also provided statements.

After hearing from Berkins and her counsel, the court rejected the sentencing recommendation in favor of a midrange standard range sentence of 90 months, plus a mandatory 24-month DUI enhancement, for a total of 114 months of confinement. The court began by questioning whether a lenient sentence was appropriate given the "egregious set of facts." After stating that its sentencing decision was "guided by the factors set forth in [RCW] 9.94A.010," the court explained that the seriousness of the offense did not warrant the recommended low-end sentence:

> And I just come back to this was such an avoidable situation. Drinking and driving is just something that is unnecessary. Drinking to the extent that you are going a hundred miles per hour the wrong way on a highway, those are facts that don't warrant a low-end sentence . . . Even excluding the prior DUI, the very facts are not a low-end sentence. I think a midrange sentence is what's appropriate here. If it wasn't for your quick acceptance of responsibility, this is a case that calls out for the high end. But I'm considering your background. I'm considering that you quickly are accepting responsibility.

Berkins timely appeals.[1]

## II.     ANALYSIS

A. Racial Animus

Berkins argues that Perrin's friend's remarks, which repeatedly referred to her as "that animal," invoked racial animus and deprived her of a fair sentencing hearing.

The administration of justice must not be predicated upon racial or ethnic bias. State v. Horntvedt, 29 Wn. App. 2d 589, 599, 539 P.3d 869 (2023). "[E]qual vigilance is required when racial bias is alleged to undermine a criminal defendant's constitutional rights at any stage of a proceeding." State v. Quijas, 12 Wn. App. 2d 363, 375, 457 P.3d

---

[1] A defendant may appeal a standard range sentence that alleges a constitutional violation. State v. Garcia-Martinez, 88 Wn. App. 322, 329, 944 P.2d 1104 (1997).

1241 (2020). Even absent express reference to race or ethnicity, we must scrutinize conduct that potentially appeals to such bias. State v. Zamora, 199 Wn.2d 698, 714, 512 P.3d 512 (2022); State v. Monday, 171 Wn.2d 667, 678, 257 P.3d 551 (2011) (noting that subtle appeals to racial prejudice are "[p]erhaps more effective but just as insidious."). Relevant here, the use of animal analogies at trial is "'problematic'" because they "often operate as racist code." State v. McKenzie, 21 Wn. App. 2d 722, 730, 508 P.3d 205 (2022) (quoting In re Pers. Restraint of Richmond, 16 Wn. App. 2d 751, 752, 482 P.3d 971 (2021); State v. Bagby, 200 Wn.2d 777, 794, 522 P.3d 982 (2023) (noting that "[c]oded language often involves themes or euphemisms that evoke a conception of 'us' versus 'them.'"). The test is whether the animal analogy in question "conveys racist sentiment or is otherwise dehumanizing." Richmond, 16 Wn. App. 2d at 756.

The State acknowledges—and we agree—that these comments were offensive and improper. See McKenzie, 21 Wn. App. 2d at 731 (comparing Black people to animals "facilitate[s] false beliefs regarding Black people's evolutionary status, biology, and propensity for hypersexuality and violence."); Bagby, 200 Wn.2d at 794 (criticizing the use of "othering" language that implies Black defendants "deserve less sympathy."). We next consider whether the improper comments prejudicially impacted Berkins' constitutional right to a fair sentencing hearing.

B. Prejudice

Berkins urges us to apply the per se prejudice standard for prosecutorial misconduct claims involving racial bias. The general rule is that a defendant must show that the prosecutor's conduct was both improper and prejudicial to prevail on a claim of prosecutorial misconduct. Zamora, 199 Wn.2d at 708. But where a prosecutor's conduct

flagrantly or apparently intentionally appeals to potential racial bias, it is per se prejudicial and reversal is required. Id. at 722; Bagby, 200 Wn.2d at 802.

Berkins argues that the per se prejudice standard should apply because the prosecutor failed to safeguard her constitutional right to a proceeding free of racial bias. She points out that Perrin's friend read from a prepared victim impact statement filed two days earlier and the trial court confirmed it read the statement prior to the sentencing hearing, yet the prosecutor, defense counsel, and the court all failed to act preemptively to redact the statement or to ask the speakers to refrain from making racially charged comments. Berkins further contends that flagrant racial bias is per se prejudicial in all circumstances, even when it is not espoused by the prosecutor. See Horntvedt, 29 Wn. App. 2d at 603 (stating that "[a]ll members of the legal community—law enforcement, attorneys, and judges—bear responsibility for addressing racial inequities in our justice system.").

Berkins cites no cases applying the per se prejudice standard for race-based claims of prosecutorial misconduct in the context of improper victim impact statement remarks, and we "will assume that counsel, after diligent search, like the court, has found none." State v. Loos, 14 Wn. App. 2d 748, 758, 473 P.3d 1229 (2020).

Furthermore, there are reasons to decline the invitation to extend that holding to this case. "Before the wrongful actions of a private citizen will be imputed to the State, it must be shown that the latter in some way instigated, encouraged, counseled, directed, or controlled the conduct in question." State v. Mannhalt, 33 Wn. App. 696, 702, 658 P.2d 15 (1983). "At the least there must be some showing of pre-knowledge and acquiescence from which a reasonable inference can be drawn that the state has encouraged or

cooperated in having a private party do for it that which it is forbidden to do itself." State v. Agee, 15 Wn. App. 709, 714, 552 P.2d 1084 (1976). It is true that, unlike private citizens, prosecutors have a duty to ensure that a defendant's constitutional rights are not violated. Zamora, 199 Wn.2d at 709. Thus, the State "owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated." Monday, 171 Wn.2d at 676; see also Zamora, 199 Wn.2d at 723 (holding that "state-sanctioned invocation of racial or ethnic bias in the justice system is unacceptable.").

Here, however, there is no evidence the State instigated, encouraged, counseled, or directed Perrin's friend to refer to Berkins as "that animal" during sentencing. And the State agreed with the defense to jointly recommend a low-end standard range sentence, and nothing in the record suggests that the State encouraged any deviation from that agreement prior to the *court's* decision to reject that recommendation in favor of a midrange sentence.

Moreover, there is a different line of cases, with a different standard of review, which applies to crime victims and survivors, who have a right to participate in the judicial process by submitting a victim impact statement and presenting a statement at the sentencing hearing. CONST. art. 1, § 35 (amend. 84); RCW 7.69.030(1)(o); State v. Gentry, 125 Wn.2d 570, 629, 888 P.2d 1105 (1995). "[T]rial courts, which are experienced in balancing the probative against the prejudicial, should exercise their informed discretion in deciding the scope of permissible victim impact evidence in a given case." Gentry, 125 Wn.2d at 632-33. To grant relief in this context, the victim impact testimony must be "so inflammatory as to render the sentencing proceeding fundamentally unfair." State v. Gregory, 158 Wn.2d 759, 853, 147 P.3d 1201 (2006).

6

Such claims are "subject to harmless error analysis." Id. at 855.

For the following reasons, we conclude that the court sentenced Berkins based on facts of the case and that Perrin's friend's improper remarks did not render the sentencing proceeding fundamentally unfair and, thus, were harmless. First, defense counsel made an uncontested objection during Perrin's friend's victim impact testimony. Second, the court explained that it imposed a midrange sentence based on the "egregious" facts of the crime and the sentencing factors outlined in RCW 9.94A.010. In doing so, the court expressly stated that it would not "get influenced by emotional, heated language" and confirmed that it was "able to filter that out." Lastly, the improper comments occurred in the context of sentencing before a trial court judge rather than a jury. We agree with Berkins that appeals to racial bias are never appropriate, regardless of the audience. But trial courts are generally capable of hearing victim impact testimony without being unduly influenced, as they possess the legal training and experience necessary to evaluate such testimony and determine an appropriate sentence. See Gentry, 125 Wn.2d at 632-33. On these facts, there is no evidence here to the contrary.

We again must be vigilant in reviewing claims that racial bias affected the defendant's right to a fair trial. The sentencing court's decision to reject the low-end sentencing recommendation in favor of a midrange standard range sentence deserves close scrutiny. We emphasize that our decision is narrow and limited to the facts and circumstances present in this case.

C. Ineffective Assistance of Counsel

Berkins claims her counsel rendered ineffective assistance by failing to proactively prevent racism. We disagree.

To establish ineffective assistance of counsel, Berkins must demonstrate that her counsel's performance fell below an objective standard of reasonableness and that as a result of that deficient performance, the result probably would have been different. State v. McFarland, 127 Wn.2d 322, 334–35, 899 P.2d 1251 (1995); Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1984). Failure to establish either prong is fatal to an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700. We strongly presume that counsel was effective. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011).

Here, defense counsel objected to Perrin's friend's improper remarks. Berkins nevertheless argues that there is a reasonable probability the sentencing court would have reached a different decision if defense counsel had objected earlier or expressly pointed out the racist nature of the remarks. But the court expressly stated that it would not be influenced by the improper comments and based its decision on the facts of the case. Berkins has not shown that the result of the proceeding would have been different if defense counsel had done so.

III.     CONCLUSION

Affirmed.

Díaz, J.
_____

WE CONCUR:

Birk, J.
_____

Mann, J.
_____

8